May it please this Honorable Court, my name is Richard Massa. I represent the heirs of James Sullivan. I appear before Your Honors this morning to clarify, at least in my view, what I believe the issue is before the Court. And I believe the issue before the Court is whether a – whether the government may put in writing, officially adopt the right, the correct, the legally required standard by which they are to operate, but then not do it. Counsel, doesn't that actually assume the answer to the question whether the written policy was the required or was the required plus? In other words, if the – and I know you don't agree with this, but if the county were to give constitutionally adequate care, but they decide to do even better than that and they have a policy that's going to be their goal and they don't live by that, what does that do conceptually? How does that help? Well, I think that's where we get into the doctrine of failure to train. I agree that the county was not legally required by statute, at least, to have specific policies and procedures to try to detect suicide ability. But when they, on their own initiative, adopt such specific policies, officially put them into place, but then do not do it, it seems to me that that is, or at least should be, the essence of the failure to train doctrine. And I think that's particularly the case when we're dealing with the topic before the Court, that is, suicide. You know, there are literally hundreds of appellate opinions dealing with suicide, which means that there are thousands of detainee suicides in our history. Now, what's your premise? There are dozens of reported decisions dealing with incarcerated people's suicides, and from that you shrink to thousands of suicides? No. I think there are hundreds of appellate opinions, which to me means that there are perhaps thousands of actual detainee suicides, which, of course, never come before the appellate courts. Have you cited any of those hundreds of cases of death? No, I have not cited that. In order to verify your statement, you have to get on the Westlaw and do a search for detainee suicides. Is that correct? No, Your Honor. I think that the Court can and should take judicial notice of the fact that suicides among detainees is presently and has been for a long time a very serious problem. Well, even if we take that as a given, my concern about the record here is that there's no expert affidavit, there's nothing to suggest that what actually was done was theoretically insufficient. Obviously, there's a terrible result in this case, but there was a contract, a person who was properly trained who interviewed the decedent. He was interviewed by others. He was asked questions in writing. His cell was looked at every 30 minutes. Where is the connection that would allow us to conclude that what was done didn't follow the required level of care or that there was deliberate indifference? The official adopted policy of the county to provide training to the correctional officers and the jail staff as to how to detect the enhanced possibility of suicide. I mean, every detainee is a potential suicide. It's sorting out those who are particularly susceptible to that, which is what we need. It is what the county attempted to do by its official policy. But the question is not violation of the policy. The question is the violation of the constitutional rights of the detainee. That's correct. And so are you automatically equating, then, the policy with constitutional right? Do you have a constitutional right to have that policy followed? Is that what you mean? Well, I think the constitutional right is to have adequate medical care, but the particular vehicle of getting to the violation here is the failure-to-train doctrine. And that, again, has to arise through the level of deliberate indifference. Is that correct? According to my reading of the Cannon decision and that doctrine, yes, a failure to train where either common sense or experience dictate that it's necessary. To my reading, that is what's required. That is deliberate indifference. And so my position is that where the county specifically adopts on its own initiative policies and procedures to detect potential suicide but then does not give that training, to me this is a model example of the application of the Cannon doctrine. We're not going to get anywhere, speaking societally, if governments can simply put into place policies and procedures that do the right thing, that comply maybe not with statute but certainly with case law, but then don't do it. And so my purpose is to clarify my position in case I didn't do it in my briefs. And with that, I will reserve whatever time I have remaining to rebuttal. You may do that. Thank you. Good morning. I represent Lake County and the sheriff. My name is Gary Lepper. It's been said in the brief that the plaintiff wants this case to be analyzed in reverse. There was a suicide. Therefore, it was preventable. And it would have been preventable if there had been some sort of nondescript, amorphous, unexplained training. The law doesn't approach it in that way. There was information that did not reach the county, as I understand it, from the arresting officer. Yes, ma'am, the tape. And what effect, if any, does that disconnect have on our analysis of the plaintiff's claims? None, unless City of Clear Lake were here. Because a county jail and its staff cannot have all of the myriad information that might be available to arresting or investigating officers. The county jail, you know, is the end result of an investigation and an arrest. There are literally volumes sometimes of arrest reports. They are not reviewed by the county jail staff, and they can't be. It's impractical. There are hundreds of people in county jails at any given time. There are dozens in the Lake County Jail. There's no way that the county jail staff can review all that. So your position is that if there is liability that would attach in that situation. In which situation? In the situation where the arresting officer knows something that might be extremely important but doesn't pass it on. Yes, ma'am. If there's to be liability, it's for the entity that employs that person and not the county. Absolutely, because that is the entity that has the knowledge. That is the entity that has the awareness to pass on a peculiar situation or circumstance. We arrested this man as he had a gun in his mouth. We arrested this man as he was taking a handful of pills, something that would be an alert. In this instance, Ostini not only didn't tell the jail about the tape, but he did say that he had detected no suicidal ideation, and he had not reported any to the jail because he wasn't concerned about it. The jail personnel was left in the position where it had to detect, if at all, for itself, for its collective self, any inclination or predisposition that Mr. Sullivan may have had for suicide. He not only demonstrated none, he denied it. He's also a man who had been in jail before. He was not uncomfortable. He had savvy. He knew to be asked, for example, that he wanted a private, that he wanted an isolation cell. What is the legal effect, from your perspective, of the existence of this policy that was not followed or allegedly was not followed to offer additional training? Yes, ma'am. That is not a county policy, as the brief may explain. It is actually CFMG's policy, whereby CFMG was going to relate with the jail commander to come up with a program. CFMG didn't do that. The county, I don't think, can be criticized or condemned for CFMG's failure to follow its own policy, on the one hand. On the other hand, be reminded that since 1997, there had been a four-hour, annual four-hour training session, which included suicidal issues. The record's information on this is, at best, sparse. The only reference is to suicidal issues. I cannot tell you what those issues were or how they may have been discussed. But I do know, in the end, that whatever the training and awareness practices of the county jail were, they were working. There had been one suicide in the history of Lake County, and it wasn't at this facility. So while the training and the awareness, the alertness, the sensitivity may have not been systematized, it evidently was sufficient to have caused these people to be attentive, as you know, from the various inquiries that were made of Mr. Sullivan. I have, absent questions, I have said what I have to say. Thank you. Thank you, ma'am. Mr. Massa, you have some rebuttal time, if you'd like to use it. I beg your pardon. How much time do I have? You have about three, three and a half minutes, almost. I would very much like to take that, Your Honors. The county's position, and basically the position of the courts throughout the United States, is basically that, well, unless the detainee prior to committing suicide tells them that they intend to do so, there's no cause of action. That's what the law in this subject, to me at least, basically is. But I say that's not what the law is under the canon doctrine. And the county perhaps did not have a duty to adopt a policy and procedure to try to detect suicide, but it in fact did so. It put it in writing. That's like a promise to society that we're going to do this. But it did not do that. Now, to me, it's perfectly obvious that Mr. Sullivan was a detainee with enhanced possibility of suicide. But we don't have to rely upon me or common sense. We can rely upon the factors which the county itself should be looked at, should be analyzed. And had that been done, Mr. Sullivan would most certainly have been designated, identified as a person with the enhanced possibility of suicide. If so, he would not have been put in an isolated cell. He might have been asked questions by a psychiatric nurse or by any nurse over and above, Mr. Sullivan, do you intend to commit suicide while you're here? That's all that was done in this case. That's all that's ever done. And that's all that ever will be done as long as the law remains as it is in the other circuits and states in this country. I submit the matter and thank the Court. Thank you. We appreciate the arguments of both parties. The case just argued is submitted. And our next case for argument is Miller v. United States. And for planning purposes of all concern, we'll take a short break after hearing Miller.
judges: Hall, T.G. Nelson, Graber